* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence or rehear the parties or their representatives; accordingly, the Full Commission affirms in part, with modifications, and remands in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On May 5, 2004, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer on May 5, 2004.
3. Plaintiff sustained an injury by accident that arose out of and in the course of her employment with defendant on May 5, 2004, when she attempted to sit on a chair with wheels that rolled out from under her causing her to fall to the floor.
4. Plaintiff had an average weekly wage of $400.00, which results in a compensation rate of $266.68 per week.
5. Plaintiff contends and defendant denies that plaintiff is entitled to recover temporary total disability compensation from July 23, 2004, through the present.
6. The following medical records are stipulated and may be received into evidence: Records from Asheville Orthopedic Associates from May 5, 2004, through January 13, 2005, consisting of seven pages.
7. Defendant will pay all medical bills causally related to injuries sustained by plaintiff in the accident that occurred on May 5, 2004, after the Industrial Commission has approved such bills.
8. Defendant terminated plaintiff on July 23, 2004, for misconduct or fault unrelated to the compensable injury for which a non-disabled employee would have been terminated.
9. The parties stipulate into evidence as Stipulated Exhibit No. 1, seven pages of plaintiff's medical records.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 43 years old. She has a General Education Development (GED) Certificate and received certification for phlebotomy (drawing of blood).
2. On May 5, 2004, while working as a phlebotomist for defendant, plaintiff attempted to sit down on a rolling stool that rolled away before she was securely seated. Plaintiff landed on her knees, tearing the meniscus of her right knee.
3. Plaintiff was seen at Sisters of Mercy Urgent Care on May 5, 2004, and on May 6, 2004, presented to Dr. Joseph M. Dement, an orthopaedic surgeon.
4. Dr. Dement assessed a right knee injury with possible recurrent meniscus tears and recommended an MRI. Dr. Dement also prescribed Darvocet and Vicodin and took plaintiff out of work pending the MRI.
5. Plaintiff requested that Dr. Dement allow her to return to light duty work on May 14, 2004, to which he consented.
6. The MRI revealed a tear of the posterior horn of the lateral meniscus of the right knee and Dr. Dement scheduled a right knee arthroscopy on June 4, 2004.
7. After the surgery, plaintiff presented to Dr. Dement on June 10, 2004, complaining of significantly more pain than Dr. Dement anticipated. On June 30, 2004, Dr. Dement gave plaintiff a steroid injection and on February 28, 2005, she received another injection. Dr. Dement testified given the degree of loss of cartilage plaintiff had in her lateral compartment, the amount of pain she was experiencing was not surprising.
8. On July 22, 2004, plaintiff returned to Dr. Dement with right knee complaints and he referred her for physical therapy.
9. On July 23, 2004, plaintiff was terminated from her employment with defendant for stealing prescription pads, forging a prescription and then attempting to get it filled at a pharmacy.
10. An August 11, 2004, note from Dr. James B. Hoer, plaintiff's primary care physician, indicates that ibuprofen and Lorcet Plus were not providing relief from the knee pain. The note also stated, "A PA where she works prescribed her two Duragesic patches 75 mcg which were used over the last week, and she states that reduced her pain `50%.'" Dr. Dement agreed to provide a prescription for the Duragesic patches.
11. An August 25, 2004, note from Dr. Dement indicates that plaintiff "definitely has patellar crepitus." Dr. Dement gave plaintiff a prescription for Orthovisc supplementation injections. These were never done due to plaintiff losing her health insurance and defendant failing to provide for it.
12. On September 30, 2004, plaintiff presented to Dr. Dement for a scheduled steroid injection, because she was still having difficulty with her right knee. Dr. Dement notes "definite crepitus and clunking sounds and continued pain despite the knee brace." Plaintiff received a steroid injection and was not to return for three months unless the injection did not relieve her pain.
13. In December 2004, plaintiff twisted her ankle and presented to Dr. Dement for ankle pain. Plaintiff next saw Dr. Dement on February 28, 2005, for knee pain. The ankle was not mentioned. Dr. Dement found significant patella crepitus and lateral joint line crepitus. Another steroid injection was done with follow-up in three to four weeks or earlier if plaintiff experienced pain. Dr. Dement testified that he would have preferred to proceed with viscal supplementation; however, plaintiff was unable to pay for these.
14. In his deposition testimony on April 25, 2005, Dr. Dement testified that he had not assigned a rating to plaintiff's knee and that he had not released her from his care. Dr. Dement testified that he fully expected that she would need the viscal supplementation. He went on to say "and because of the cartilage wear of the lateral plateau, my concern eventually is further surgery, osteotomy, intercompartmental replacement, or even a total knee may be down the road."
15. Dr. Dement did testify that plaintiff exhibited some drug-seeking behavior, but then went on to say that surgery is very painful; therefore, he gave plaintiff the benefit of the doubt. Plaintiff testified that because of the pain medication she had been taking for a prior shoulder injury, she had a hard time getting the knee pain under control with the medications. Dr. Dement's testimony confirmed that plaintiff "had taken so much pain medication beforehand that her system was used to the narcotic; and therefore, it didn't last as long. There was a tolerance built up."
16. At the hearing before the Deputy Commissioner, plaintiff testified that she can be on her leg with or without the knee brace for a few hours before it starts locking up and then it takes several days for it to get better.
17. Plaintiff testified and the Full Commission finds as fact that she has tried unsuccessfully to find work within her light duty restrictions. Plaintiff has looked for work at Sona Press, Pier One Imports, Plasma Biological, Dollar Tree, a coffee company, Proffitt's, and College Colors in the mall. Plaintiff has also unsuccessfully tried to find a job as a phlebotomist with Asheville Family Medicine, the Red Cross, Asheville Women's Center, and Family Medical Center. Plaintiff testified she has regularly looked for work. There is no evidence to refute plaintiff's testimony that she has been unable to find work due to her restrictions and ongoing pain through April 25, 2005, the date of Dr. Dement's last opinion regarding plaintiff's medical condition.
18. In his April 25, 2005, deposition testimony, Dr. Dement testified that he returned plaintiff to light duty work as of May 14, 2004. There was no further medical evidence in the record after this date addressing the issue of plaintiff's continuing disability.
19. Dr. Dement testified and the Full Commission finds that plaintiff has not reached maximum medical improvement from her compensable injury sustained on May 5, 2004.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a direct result of work assigned to plaintiff on May 5, 2004, plaintiff sustained an injury by accident arising out of and in the course of her employment, which resulted in injury to her right knee. N.C. Gen. Stat. § 97-2(6).
2. In determining whether the plaintiff's termination from employment on July 23, 2004, would preclude her from receiving workers' compensation benefits, initially defendants must prove that (1) plaintiff was terminated for her conduct, (2) the same misconduct would have resulted in the termination of a non-disabled employee and (3) the termination was unrelated to plaintiff's compensable injury. An employer's successful demonstration of such evidence is "deemed to constitute a constructive refusal" by the employee to perform suitable work, a circumstance that would bar benefits for lost earnings. McRae v.Toastmaster, Inc., 358 N.C. App. 488, 597 S.E. 2d 695, (2004). In the present case, defendant met its burden of showing that plaintiff refused suitable employment when she was terminated on July 23, 2004, for reasons for which any other non-disabled employee would have been terminated. N.C. Gen. Stat. § 97-32.
3. Plaintiff would be entitled to benefits if she can demonstrate that the work-related injury, and not the circumstance of the termination, prevented her from either performing alternative duties or finding comparable employment. Plaintiff has shown that she was unable to find employment as a result of her restrictions and ongoing pain through April 25, 2005, the date Dr. Dement last opined as to plaintiff's medical condition. Id. and Seagraves v. Austin Co. of Greensboro, 12123 N.C. App. 228, 472 S.E. 2d 397 (1996) ; White v.Weyerhaeuser Company, 167 N.C. App. 658, 606 S.E.2d 389 (2005).
4. As a direct and proximate result of plaintiff's compensable injury by accident, plaintiff is entitled to compensation for temporary total disability at the rate of $266.68 per week from July 23, 2004, and continuing until April 25, 2005, the date Dr. Dement last opined as to plaintiff's medical condition. N.C. Gen. Stat. § 97-29.
5. As a direct result of plaintiff's compensable injury by accident, plaintiff is entitled to have defendants pay for all her related medical expenses incurred or to be incurred for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and97-25.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for her temporary total disability at the rate of $266.68 per week beginning July 23, 2004, and continuing until April 25, 2005, the date Dr. Dement last opined as to plaintiff's medical condition. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved.
2. Defendants shall pay for all of plaintiff's medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident on May 5, 2004, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure or give relief and will tend to lessen the period of plaintiff's disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the amount awarded plaintiff in paragraph one of this Award is approved for plaintiff's counsel. Of any amount that has accrued, twenty-five percent (25%) of the lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
 * * * * * * * * * * * ORDER
This matter is remanded to the Chief Deputy Commissioner for a hearing on the following issues:
1. Plaintiff's entitlement to any temporary total disability compensation after April 25, 2005; and
2. The assessment of a penalty against defendant pursuant to the provisions of N.C. Gen. Stat. § 97-94.
This the __ day of May 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER