ALBERTA McRAE, Employee v. TOASTMASTER, INC., Employer SELF-INSURED
(CORPORATE CLAIMS MANAGEMENT, Servicing Agent)

No. 287A03

(Filed 25 June 2004)

**1. Workers' Compensation—*Seagraves* test—injured employee's right to continuing benefits—termination for misconduct**

Our Supreme Court adopts the *Seagraves*, 123 N.C. App. 228 (2003), test for determining an injured employee's right to continuing workers' compensation benefits after being terminated for misconduct whereby an employer must demonstrate initially that the employee was terminated for misconduct, the same misconduct would have resulted in the termination of a nondisabled employee, and the termination was unrelated to the employee's compensable injury, in order to find that an employee constructively refused suitable work, thus barring workers' compensation benefits for lost earnings unless the employee is then able to show that his inability to find or hold other employment at a wage comparable to that earned prior to the injury is due to the work-related injury.

**2. Workers' Compensation—constructive refusal of suitable employment—termination for misconduct unrelated to workplace injuries**

The Industrial Commission erred in a workers' compensation case by concluding that defendant employer met its burden of providing competent evidence that plaintiff employee's failure to perform her UPC labeling duties was not related to her prior compensable injury under workers' compensation, which thereby led to her termination for misconduct and denial of additional workers' compensation benefits based on an alleged failure to accept a suitable position reasonably offered by her employer, because: (1) the evidence relied upon by the Commission's majority indicated that plaintiff was having continuing problems in the wake of, and as a result of, her injuries; (2) there was no competent evidence referenced in the Commission's opinion and award that supported a showing by defendant employer that plaintiff employee's termination was unrelated to her injuries, and defendant cannot meet this burden by showing that plaintiff failed to show otherwise; and (3) evidence and testimony indicated plain-

tiff's efforts toward finding subsequent commensurate employment may have been compromised by both market conditions and her lack of work experience, neither of which may serve as a means for defendant employer to sidestep its benefit obligations.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 158 N.C. App. 70, 579 S.E.2d 913 (2003), affirming an opinion and award entered by the North Carolina Industrial Commission on 18 April 2002. Heard in the Supreme Court 15 October 2003.

*H. Bright Lindler and Charles R. Hassell, Jr., for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Kirk D. Kuhns and Jaye E. Bingham, for defendant-appellees.*

LAKE, Chief Justice.

This case arises out of an employment dispute that ultimately resulted both in plaintiff's termination and in her loss of workers' compensation benefits. The sole issue presented on appeal to this Court is whether defendant-employer provided competent evidence showing that plaintiff's failure to perform her assigned job duties was not related to her prior compensable injury under workers' compensation. The Court of Appeals held there was such competent evidence, thereby denying plaintiff additional benefits. For the reasons set forth herein, we reverse.

At the outset, we note the significance of the circumstances of the case at bar. Only a handful of cases concerning the termination of injured employees have been scrutinized by the state's appellate courts—and none by this Court. We thus recognize that our decision here will impact many workers' compensation claims that involve an employee who is not performing his work-related duties at preinjury levels. In its consideration of the instant case, the Court of Appeals applied a balancing test originally established in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996),[1] and concluded that plaintiff had failed to demonstrate that she was entitled to continued benefits after being terminated from employment

---

1. The noted citation has been alternately referred to as *"Seagraves"* and *"Seagroves"* since its publication in 1996. As the record demonstrates that the plaintiff's name was Cheryl D. "Seagraves," this Court will cite to the case as *"Seagraves v. Austin Co. of Greensboro."*

McRAE v. TOASTMASTER, INC.

[358 N.C. 488 (2004)]

for misconduct. As a consequence of this holding, we therefore must determine whether: (1) the test in *Seagraves* is the appropriate means for deciding a case of this nature, and, if so, (2) whether the test was appropriately applied in this instance.

I.

In 1996, plaintiff Alberta McRae began working as an assembler for defendant, Toastmaster, Inc. Her initial duties required her to peel Uniform Product Code (UPC) labels from a roll and place them on boxes. After working in this position for six months, plaintiff was transferred to a different department, where she installed clock components.

Sometime in 1997, plaintiff began experiencing pain and numbness in her right hand. In January 1998, plaintiff visited the company nurse, complaining of continuing discomfort in her hand. She was referred to the Occupational Health Center at Scotland Memorial Hospital and was placed on light-duty work through mid-February.

Plaintiff's symptoms persisted throughout the first half of 1998, and in June she obtained permission to see an orthopedic surgeon. She was diagnosed with carpal tunnel syndrome and initially treated with medication. In July 1998, plaintiff informed the surgeon that she had experienced some improvement in her condition; however, in September 1998, she returned to the doctor complaining of problems with both hands. Soon thereafter, plaintiff was diagnosed with bilateral carpal tunnel syndrome. During this period, plaintiff's doctor recommended that plaintiff refrain from clock assembling duties at work. In response, defendant assigned plaintiff to other light-duty work assignments.

In late October 1998, plaintiff had surgery on her right wrist. Similar surgery on her left wrist was performed about a month later. In the wake of her surgeries, plaintiff briefly returned to clock assembling, but she continued to feel discomfort performing the tasks required. Plaintiff's doctor finally advised her to avoid such work permanently.

Sometime in April 1999, defendant reassigned plaintiff to her duties as a UPC box labeler—her original position with the company. However, in the weeks that followed, plaintiff failed to label the boxes as required. When she was reprimanded by the company for her miscues, plaintiff could not explain why she missed so many boxes, although she would later testify at her workers' compensation

hearing that she had some difficulty with her hands while trying to peel the individual labels off their roll.

On 5 May 1999, defendant terminated plaintiff's employment with the company. Defendant admitted liability for benefits related to plaintiff's carpal tunnel syndrome surgery, paid plaintiff compensation for the periods of work she missed due to her surgery, and paid plaintiff's medical bills that were associated with her hand injuries.

Plaintiff then sought additional relief for the continuation of benefit payments and complied with all necessary procedures to procure a hearing before a deputy commissioner of the North Carolina Industrial Commission. In an order filed 9 February 2001, the deputy commissioner found that: (1) although plaintiff was terminated for errors she committed as a UPC labeler, her errors were not intentional and did not constitute misconduct; (2) there was a serious question regarding whether the labeling job was suitable for plaintiff in view of her hand ailments and the repetitive pinching and hand movements required by the position; and (3) she continued to have some residual symptoms in her hands while performing the job.

As a result of these findings, the deputy commissioner concluded that: (1) since plaintiff was not terminated for misconduct, she did not constructively refuse suitable employment; and (2) plaintiff is therefore entitled to elect between receiving compensation for her disability and compensation for her actual wage loss, whichever proves to be the "more munificent remedy."

The deputy commissioner then calculated plaintiff's disability award at a rate of $166.67 per week, to begin the week after her termination. The deputy commissioner also ordered that such payments continue, as applicable, until plaintiff returned to work or if unable to do so, through her lifetime.

Defendant appealed to the full Commission. The Commission, with one commissioner dissenting, filed an opinion and award on 18 April 2002, finding that the greater weight of the evidence "fail[ed] to establish that plaintiff could not perform the UPC labeler position [due to her injuries]." The majority went on to find that plaintiff's failure to perform her labeling duties constituted "a failure to accept a suitable position reasonably offered by her employer." The Commission's majority then concluded that plaintiff "was terminated for misconduct and she thereby constructively refused suitable

McRAE v. TOASTMASTER, INC.

[358 N.C. 488 (2004)]

employment." As a result, the majority reduced plaintiff's benefit award to $166.67 for sixteen weeks.

The Commission's dissenting opinion, in essence, concurred with the deputy commissioner's view, concluding that plaintiff's inability to keep up with the demands of the UPC labeling job was caused by her compensable occupational disease. Plaintiff was under doctor's orders to avoid " 'repetitious pushing, pulling, gripping, pinching[,] and fingering,' " which, in the dissent's reasoning, constituted the core duties of a UPC box labeler. Thus, because plaintiff was assigned a task that required her to perform the same type of repetitive hand functions that had effected her original injuries, it could not be appropriately determined that plaintiff had refused—constructively or otherwise—a suitable offer of employment.

Upon review by the Court of Appeals, a majority affirmed the full Commission's opinion and award, concluding that: (1) defendant-employer had provided competent evidence that plaintiff's failure to perform her UPC labeling duties was not related to her prior compensable injury, and (2) plaintiff had failed to present any evidence of disability, and any presumption of such disability ended when plaintiff returned to work. The Court of Appeals' majority thus affirmed the Commission's conclusions that plaintiff had constructively refused suitable employment and that she was entitled only to a reduced award.

The Court of Appeals' dissenting opinion concluded that the evidence was susceptible to only two interpretations—plaintiff's failure to perform tasks previously accomplished was attributable to either her intervening injury or negligence—neither of which meets the legal criteria required to establish misconduct or a constructive refusal of suitable employment. The dissent's paramount concern focused on the potential prospective effect of the majority's holding, which, according to the dissent, would expand an employer's right to terminate an injured employee well beyond the narrow parameters recognized under existing law.

II.

On appeal to this Court, plaintiff argues that the majorities on the Industrial Commission and the Court of Appeals decided her case under a misapprehension of the law. In sum, she contends that her conduct under the circumstances did not amount to either: (1) misconduct that would justify her termination without regard for her

compensable injury, or (2) a refusal—actual or constructive—to engage in suitable employment.

In *Seagraves*, the Court of Appeals examined the question of whether an employee can be deemed to have refused suitable employment, thereby precluding injury-related benefits, if she is terminated for misconduct that is unrelated to her workplace injuries. 123 N.C. App. 228, 472 S.E.2d 397; *see also* N.C.G.S. § 97-32 (2003) (refusal of injured employee to accept suitable employment shall result in suspension of compensation); and N.C.G.S. § 97-32.1 (2003) (if an employee's trial return to work is unsuccessful, his or her right to continuing compensation shall be unimpaired unless terminated or suspended thereafter pursuant to the Workers' Compensation Act). In its analysis in *Seagraves*, the court acknowledged that the underlying purpose of the North Carolina Workers' Compensation Act is to "provide compensation to workers whose earning capacity is diminished or destroyed by injury arising from their employment" and took note of "the liberal construction which has long been accorded its provisions." 123 N.C. App. at 233, 472 S.E.2d at 401 (citations omitted). As a result of both the Act's purpose and history, the court concluded that "where an employee, who has sustained a compensable injury and has been provided . . . rehabilitative employment, is terminated . . . for misconduct . . ., such termination *does not automatically constitute a constructive refusal to accept [suitable] employment* so as to bar the employee from receiving benefits[.]" *Id.* at 233-34, 472 S.E.2d at 401 (emphasis added).

[1] In lieu of an employee's termination for misconduct serving as an automatic bar to benefits, the court in *Seagraves* adopted a test that measures whether the employee's loss of earning capacity is attributable to the wrongful act that caused the employee's termination from employment, in which case benefits would be barred, or whether such loss of earning capacity is due to the employee's work-related disability, in which case the employee would be entitled to benefits intended for such disability. *Id.* at 234, 472 S.E.2d at 401. Thus, under the *Seagraves'* test, to bar payment of benefits, an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury. *Id.*

An employer's successful demonstration of such evidence is "deemed to constitute a constructive refusal" by the employee to perform suitable work, a circumstance that would bar benefits for lost

McRAE v. TOASTMASTER, INC.

[358 N.C. 488 (2004)]

earnings, "*unless* the employee is then able to show that his or her inability to find or hold other employment . . . at a wage comparable to that earned prior to the injury[] is due to the work-related disability." *Id.* (emphasis added). In other words, a showing of employee misconduct is not dispositive on the issue of benefits if the employee can demonstrate that his or her subsequent failure to perform suitable work or find comparable work was the direct result of the employee's work-related injuries. Under *Seagraves*, the employee would be entitled to benefits if he or she can demonstrate that work-related injuries, and not the circumstances of the employee's termination, prevented the employee from either performing alternative duties or finding comparable employment opportunities.

We note that the pertinent inquiry under *Seagraves* is not focused on determining whether an employer may fire an injured employee for misconduct unrelated to his injuries; it is clear that an employer may do so. *See, e.g.*, N.C.G.S. § 95-241(b) (2003). Rather, the relevant question is determining whether, upon firing an injured employee for such misconduct, an employer can nevertheless be held responsible for continuing to pay injury benefits to the terminated employee.

The court in *Seagraves* defended its balancing test as a fair and effective means for protecting the interests of both employers and injured employees. 123 N.C. App. at 233-34, 472 S.E.2d at 401. On the one hand, the test serves to protect injured employees from unscrupulous employers who might fire them in order to avoid paying them their due benefits. On the other hand, according to the lower court, the test simultaneously serves employers as a shield against injured employees who engage in unacceptable conduct while employed in rehabilitative settings. *Id.*

This Court's review of the *Seagraves*' test reveals that its proper application, as dictated by the Court of Appeals, can and will produce results that square with the underlying intent of our state's workers' compensation laws. In our view, the test provides a forum of inquiry that guides a fact finder through the relevant circumstances in order to resolve the ultimate issue: Is a former employee's failure to procure comparable employment the result of his or her job-related injuries or the result of the employee's termination for misconduct? In disputes like the one at bar, the critical area of inquiry into the circumstances of an injured employee's termination is to determine from the evidence whether the employee's failure to perform is due to an *inability* to perform or an *unwillingness* to perform.

McRAE v. TOASTMASTER, INC.

[358 N.C. 488 (2004)]

If, on the one hand, the greater weight of the evidence shows that the former employee is a victim of job-related injuries, the original employer remains responsible for benefit obligations arising out of the employee's job-related injury. Under such circumstances, the fact that the employee was fired for unrelated misconduct is irrelevant because the employee's termination has no bearing on either the employee's existing compensable injury or how that injury affects his or her ability to find other employment. In our view, any rule that would allow employers to evade benefit payments simply because the recipient-employee was terminated for misconduct could be open to abuse. Such a rule could give employers an incentive to find circumstances that would constitute misconduct by employees who were previously injured on the job. We also recognize that the current benefit scheme faces the potential for abuse by employees. If injury-related benefits continued without regard to an employee's misconduct, injured employees conceivably could commit misconduct in order to be terminated without suffering the appropriate financial consequences.

On the other hand, if the terminated-for-misconduct employee fails to show by the greater weight of the evidence that his or her inability to find or perform comparable employment is due to the employee's work-related injuries, the employer is then freed of further benefit responsibilities. Under such circumstances, the employee would be held accountable for his or her misconduct, which would be deemed tantamount to a constructive refusal to perform suitable work duties. As a consequence of such refusal, the employee would forfeit the right to benefits, pursuant to section 97-32, which provides that "[i]f an injured employee refuses employment procured for him suitable to his capacity[,] he shall not be entitled to any compensation at any time during the continuance of such refusal." N.C.G.S. § 97-32.

The test in *Seagraves* is intended to weigh the actions and interests of employer and employee alike. Ultimately, the *Seagraves* rule aims to provide a means by which the Industrial Commission can determine if the circumstances surrounding a termination warrant preclusion or discontinuation of injury-related benefits. As such, we conclude that this test is an appropriate means to decide cases of this nature.

III.

In adopting the *Seagraves'* test for determining an injured employee's right to continuing benefits after being terminated for

McRAE v. TOASTMASTER, INC.

[358 N.C. 488 (2004)]

misconduct, we turn our attention to the case *sub judice*, and consider whether the test was appropriately applied in this instance. We note that the case at bar has sparked deeply divided opinions among those who have considered it previously. To this point, seven decision-making officials have reviewed this matter. Four of them have agreed with the defendant-employer and three have favored the employee's position.

In considering this issue, we reiterate that when reviewing Industrial Commission decisions, appellate courts must examine "whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Commission's findings of fact are conclusive on appeal when supported by such competent evidence, "even though there [is] evidence that would support findings to the contrary." *Jones v. Myrtle Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965). However, evidence tending to support a plaintiff's claim is to be viewed in the light most favorable to the plaintiff, and "plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998); *see also Hollman v. City of Raleigh*, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968) (holding that "our Workmen's Compensation Act should be liberally construed to effectuate its purpose to provide compensation for injured employees . . ., and its benefits should not be denied by a technical, narrow, and strict construction"). The Commission's conclusions of law. are reviewed *de novo. Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 534, 491 S.E.2d 678, 681 (1997), *disc. rev. denied*, 347 N.C. 671, 500 S.E.2d 86 (1998). Although this Court's review of the case is limited to the decision of the Court of Appeals, our examination will necessarily include an analysis of whether that court properly utilized the applicable standard of appellate review and whether its conclusions find support within that standard's framework. In order to do so, this Court must also review whether the evidence presented before the Commission supports its factual findings, and whether those findings support the Commission's conclusions of law in its opinion.

In applying the *Seagraves'* test, with respect to the burden of proof, the Commission must determine first if the employer has met its burden of showing that the employee was terminated for misconduct, that such misconduct would have resulted in the termination of

a nondisabled employee, and that the termination was unrelated to the employee's compensable injury. Assuming the employer has satisfied such burden, the Commission must then determine if the employee has demonstrated that her inability to perform work assignments for the employer, or to procure commensurate work from other prospective employers, is a consequence of her work-related injury.

At the Commission hearing, defendant-employer presented evidence showing that in the aftermath of her work-related injury, plaintiff-employee failed to adequately perform her assigned duties. After her injury, plaintiff was assigned the task of applying UPC labels to boxes. Under normal conditions, according to the Commission's order, plaintiff was expected to label approximately 1,000 boxes a day. Prior to her injury, plaintiff performed the assigned duties without incident. However, when she returned to the labeler position, post injury, she failed to label the requisite number of boxes. Between mid-April 1999 and early May 1999, plaintiff was reprimanded on several occasions for missing labels. The series of omissions eventually resulted in her termination on 5 May 1999.

A review of the record reveals that there is some competent evidence demonstrating that plaintiff failed to perform her assigned duties as a UPC labeler during the period in question. Thus, this Court will not fault the Commission's finding of fact to that effect. *Deese*, 352 N.C. at 116, 530 S.E.2d at 553; *Jones*, 264 N.C. at 402, 141 S.E.2d at 633. In addition, this Court also concludes that the circumstances demonstrated, by the greater weight of the evidence, that plaintiff was terminated for misconduct (failure to adequately perform), and that her actions would have resulted in the termination of a nondisabled employee. Thus, defendant has satisfied its burden on two of the three initial requirements under *Seagraves*. 123 N.C. App. at 234, 472 S.E.2d at 401.

[2] We now examine whether defendant has shown by the greater weight of the evidence that plaintiff's termination was unrelated to her compensable injury, *id.* (part three of defendant's initial three-part burden), and, *if so*, whether plaintiff has countered by demonstrating that her failure to perform her post-injury duties or to procure commensurate work from other employers was due to her work-related injuries, *id.* (outlining plaintiff's burden when defendant satisfies all three elements of the three-part test). In essence, defendant argues that the Commission's extant findings show plain-

tiff's termination was not related to her injury while plaintiff contends that those same findings demonstrate that her injuries prevented her from performing her duties or from finding commensurate employment.[2] As a consequence, we review in turn the Commission's findings as they pertain to: (1) defendant's contention that plaintiff's termination was unrelated to her job-related injury versus plaintiff's contention that her injuries prevented her from performing her duties, and (2) plaintiff's contention that her inability to find commensurate employment was due to her job-related injury.

In its opinion and award, the Commission found that "[t]he greater weight of the evidence . . . fails to establish that plaintiff *could not* perform the UPC labeler position." (Emphasis added.) In support of this finding of fact, the Commission also found that: (1) plaintiff did not explain to her superiors why she missed the boxes; (2) plaintiff testified that she had some difficulty with her hands while performing the labeling job; (3) although plaintiff had residual symptoms, in view of her inability to remember certain pertinent information, it was not clear that she actually remembered having problems with the repetitive movements required by the labeler job; and (4) plaintiff's medical doctor, on 10 May 1999, issued permanent restrictions against activities involving repetitive pushing, pulling, gripping, fingering, and pinching. From this evidence, the Commission determined, under finding of fact number nine, that "the evidence shows that plaintiff was able to perform the UPC label position satisfactorily before her injury, and there was no evidence that plaintiff sought medical attention or otherwise was not mentally or physically able to perform the UPC labeler position after her recovery from the [carpal tunnel syndrome] surgery."

In our view, the problem with the majority's finding of fact number nine is two-fold: First, the evidence itself, as reflected by the Commission's opinion and award, suggests that plaintiff was indeed experiencing difficulties with her labeling duties. Plaintiff testified that she had trouble with her hands while labeling, and the Commission acknowledged, in finding of fact number six, that she also had "residual symptoms." In addition, the Court notes that plaintiff made a return visit to her medical doctor on 13 April 1999, and that less than a month later, on 10 May 1999, the physician issued fur-

2. The Court notes that under *Seagraves*, the question of whether an employee's termination was unrelated to her injury is separate from the question of whether the employee's injury prevented her from procuring commensurate employment. Thus, in future cases, the Industrial Commission should make findings of fact that specifically address each question in turn.

McRAE v. TOASTMASTER, INC.

[358 N.C. 488 (2004)]

ther restrictions on her duties. Thus, if anything, the evidence relied on by the Commission's majority indicates that plaintiff was having continuing problems in the wake of, and as a result of, her injuries. *See Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (holding that evidence tending to support a plaintiff's claim is to be viewed in the light most favorable to the plaintiff, and "plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence").

Second, and perhaps more troubling, is the fact that the Commission's opinion is bereft of any evidence proffered by defendant that would support the quoted portion of finding of fact number nine. The test in *Seagraves* makes it incumbent on a defendant to show, by the greater weight of the evidence, that a plaintiff's termination was unrelated to his or her work-related injuries; the burden is not on a plaintiff to show that the termination was so related. A careful reading of the Commission's opinion reveals the majority reached finding of fact number nine because plaintiff failed to demonstrate adequately that her termination was tied to her injuries and not because defendant had shown by the greater weight of the evidence that the termination was not related to plaintiff's injuries. This burden shift is improper and compels this Court to conclude that the Commission's majority erred when it found that "there was no evidence that plaintiff . . . was not mentally or physically able to perform the UPC labeler position."

In sum, we find no competent evidence referenced in the Commission's opinion and award that supports *a showing by the company-defendant that the plaintiff-employee's termination was unrelated to her injuries*. The initial burden is on the company to demonstrate by a greater weight of the evidence that the termination of the employee was not related to the employee's injuries. A defendant-company cannot meet this burden by showing that a plaintiff-employee failed to show otherwise. It is not incumbent on the plaintiff-employee to make such a showing. Rather, the burden is on the defendant-company to produce evidence that demonstrates *the employee was mentally and physically able to perform* the duties assigned to her. In the instant case, we find no such evidence in the majority's findings.[3]

---

3. We note that the Commission's majority additionally erred when it included a conclusion of law under the aegis of its findings of fact. In the final sentence of finding of fact number nine, the Commission's majority stated that "[p]laintiff's failure to perform the UPC labeler position under the facts of this case *constitutes a failure to accept a suitable position reasonably offered by her employer.*" (Emphasis added.)

McRAE v. TOASTMASTER, INC.

[358 N.C. 488 (2004)]

In addition, the Court notes that the evidence and testimony indicate plaintiff's efforts toward finding subsequent commensurate employment may have been compromised by both market conditions and her lack of work experience. Neither circumstance may serve as a means for defendant to sidestep its benefit obligations. *See Mabe v. North Carolina Granite Corp.*, 15 N.C. App. 253, 256, 189 S.E.2d 804, 807 (1972) (holding, in essence, that when an industrial injury renders an employee unable to earn wages, the employer is not alleviated of benefit obligations if the employee's lack of education or experience prevents the employee from finding alternative employment within the marketplace); *see also Peoples v. Cone Mills Corp.*, 316 N.C. 426, 443-44, 342 S.E.2d 798, 808-09 (1986) (holding that an injured employee shall retain benefit eligibility if the employee's age, inexperience, lack of education, or any other preexisting factor preclude the employee from procuring alternative employment).

Because this Court has concluded that the Commission's opinion and award does not reflect that the company met its initial burden of showing that plaintiff's termination was unrelated to her work-related injuries, we find it unnecessary at this time to consider whether plaintiff has shown that her inability to procure commensurate employment was due to her injuries. If, upon remand, the Commission properly concludes that the evidence presented shows that defendant terminated plaintiff without regard to her injuries, we instruct the Commission to then determine whether plaintiff has shown, by the greater weight of the evidence, that her work-related injuries prevented her: (1) from performing her duties as a UPC labeler, or (2) from finding alternative commensurate employment. *Seagraves*, 123 N.C. App. at 234, 472 S.E.2d at 401. If plaintiff makes this showing, she is entitled to continued benefits. *Id.* If she fails to do so, the company is alleviated of future injury-related benefit obligations. *Id.*

We therefore reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Industrial

---

While the issue of whether plaintiff failed to perform her duties is a question of fact, the determination of whether plaintiff's failings constituted a constructive refusal to accept suitable employment is a question of law. The distinction is significant, as an appellate court's standard of review of the Commission's findings of fact is markedly different from its standard for reviewing the Commission's conclusions of law. Thus, we urge commissioners to exercise care when differentiating between the two entities in the future.

Commission for reconsideration in line with *Seagraves* and the attendant directives contained herein.

REVERSED AND REMANDED.