Because I believe that the majority has erred in following the guidance provided by the Supreme Court in McRae v. Toastmaster,Inc., 358 N.C. 488, 597 S.E.2d 695 (2004), and has therefore failed to properly apply the relevant law to the facts of the present case, I respectfully dissent.
As the Court made clear in McRae, the Commission may not find that plaintiff constructively refused to perform suitable work unless defendants have met their burden of proof in showing that plaintiff's termination was "unrelated to the employee's compensable injury." As the Court explained,
 The initial burden is on the company to demonstrate by a greater weight of the evidence that the termination of the employee was not related to the employee's injuries. A defendant-company cannot meet this burden by showing that a plaintiff-employee failed to show otherwise. It is not incumbent on the plaintiff-employee to make such a showing. Rather, the burden is on the defendant-company to produce evidence that demonstrates the employee was mentally and physically able to perform the duties assigned to her.
McRae at 499, 597 S.E.2d at 702-03 (emphasis in original). The Court found that the findings of fact set forth in the original Opinion and Award of the Full Commission were insufficient to meet defendants' burden, because they showed only that plaintiff had failed to present sufficient evidence that her termination was related to her injuries:
 A careful reading of the Commission's opinion reveals the majority reached finding of fact number nine because plaintiff failed to demonstrate adequately that her termination was tied to her injuries and not because defendant had shown by the greater weight of the evidence that the termination was not related to plaintiff's injuries.
McRae at 499, 597 S.E.2d at 702. Because the burden of proof lies with defendants, the Court reversed and remanded the case for reconsideration of that issue.
On remand, the majority's conclusion that defendants have met their burden of showing that plaintiff's termination was unrelated to her compensable carpal tunnel syndrome is apparently based on its findings of fact that plaintiff failed to seek medical care and failed to report to her supervisors that she was experiencing hand pain or discomfort during the period of time between being assigned to apply UPC labels and being terminated for missing labels. From those findings, the majority apparentlyinfers that, because plaintiff had complained of pain and discomfort previously while working as a "dialer," her failure to complain while working as a UPC labeler indicated an absence of such pain or discomfort. Regardless of whether such an inference is valid (and I do not believe it is), it clearly fails to constitute substantive evidence by defendants in support of their burden of proof.
In fact, the only substantive evidence produced by defendants to show that plaintiff's termination was unrelated to her compensable injury appears to be the report and deposition of physical therapist Chuck Jackson. Jackson concluded in his report on plaintiff's FCE that plaintiff's physical capabilities matched the physical demands of the UPC labeling job. However, Jackson assessed the physical demands of plaintiff's UPC labeling job as involving exclusively (1) "constant sitting" and (2) "occasional walking." Jackson considered none of the relevant physical demands related to plaintiff's post-carpel-tunnel-surgery hand dexterity or fine motor control, despite the fact that plaintiff scored in the lowest possible percentile category on three out of the five "fine motor" tests provided by Jackson.
Although Jackson further testified that he did not find anything in his evaluation that would have "precluded" plaintiff from performing the UPC labeling job, he failed to relate that conclusion in any way to plaintiff's admittedly poor fine motor skills. Furthermore, the issue in the present case is not whether plaintiff's condition rendered her incapable of applying UPC labels, but instead merely whether plaintiff's compensable injurycontributed to her missing some five labels out of the morethan ten thousand that she applied during the brief period she worked as a UPC labeler before her termination. Because Jackson's testimony and report failed to address that particular issue, I believe that his testimony is insufficient to meet defendants' burden of showing that plaintiff's termination was unrelated to her compensable injury.
The remaining evidence cited in the majority's findings of fact is likewise insufficient to meet defendant's burden of proof under McRae. When plaintiff's supervisors asked plaintiff why she had missed labels, she did not provide them with any reason for her failures, medical or otherwise, responding instead that she "just missed them," or simply, "I don't know." Dr. Brenner testified that he had insufficient information regarding either the UPC labeler position or plaintiff's tolerance of it to render a medical opinion concerning plaintiff's performance of the work. Given that plaintiff apparently performed the functions of a UPC labeler without any trouble for a period of six months before ever developing symptoms of carpel tunnel syndrome, something was clearly different during the subsequent three-week period leading to her termination. Perhaps plaintiff was experiencing difficulties because of her compensable injury, as she testified before the deputy commissioner. Or perhaps plaintiff was distracted at work because she was gossiping with a coworker. Because defendants were unable to present any substantiveevidence showing that plaintiff's compensable injury was not
the cause of her missing labels, and therefore of her termination, I believe that defendants have failed to meet their burden of proof under McRae.
 * * * * * * * * * * *
As noted above, I further disagree with the majority's inference that, because plaintiff did not report any physical pain or discomfort to her supervisors or doctor while working as a UPC labeler, it follows that she was not suffering any such pain or discomfort at that time. While it is true that plaintiff had informed her supervisors and doctor of pain and discomfort before, there is little evidence in the record of howimmediately she would make such reports.
Plaintiff apparently saw Dr. Brenner on April 13, 1999, complaining of discomfort and swelling in her hands while working as a dialer following her late-1998 carpel tunnel release surgeries. However, plaintiff had been working as a dialer since at least February 18, 1999 (when she received a disciplinary talking — to for falling behind in her dialer work due to wearing false fingernails), and there is no evidence concerning how long her hands had been bothering her before she finally complained and went to see Dr. Brenner. In comparison, plaintiff worked as a UPC labeler from April 13, 1999, until her May 5, 1999, termination, a period of only 3 weeks. Moreover, plaintiff's final three disciplinary actions took place over only four days
of work: April 27 (her second, "written" warning), April 28 (for which she was suspended for three days), May 4 (no disciplinary action took place), and May 5 (the day she was terminated). There is no evidence in the record that plaintiff would usually report pain or discomfort over such short periods of time.
To the contrary, the record includes evidence that plaintiffwould not immediately report problems with her work. Plaintiff's February 18, 1999, disciplinary action criticized plaintiff for falling behind on her work, and further stated:
 I told her she was expected to do her production. She did not call me when she missed marks. If she has any problem doing her job she must tell supervisor before she miss[es] any production.
Thus, plaintiff's disciplinary record itself shows that plaintiff had to be reminded of her responsibility to report problems to her supervisor, even after some three years of employment. Indeed, plaintiff's failure to communicate problems clearly to her supervisors is consistent with the expert testimony presented in this case regarding the considerable limitations of a person, such as plaintiff, with mild retardation and an IQ of only 59.
Accordingly, I do not believe the record of evidence supports an inference that plaintiff was feeling no pain or discomfort based solely upon her failure to complain of any pain or discomfort during her brief period of work as a UPC labeler, and her inability during that time to explain why she was missing labels except to say "I just missed them" or "I don't know."
 * * * * * * * * * * *
Finally, even if defendants had met their burden under McRae
of showing that plaintiff's termination was unrelated to her compensable injury, I believe the majority has erred in concluding that plaintiff failed to meet her burden of proof that her injury prevented her from procuring commensurate employment.See McRae at 500, 597 S.E.2d at 703. The majority found as fact that plaintiff's only evidence of ongoing disability was her own testimony of on-going hand symptoms, and that her testimony that the forty-six employers she visited following her termination were simply "not hiring" was insufficient to show that her disability had prevented her from being hired.
However, plaintiff also presented the testimony and report of rehabilitation counselor Stephen Carpenter, who testified that plaintiff is unemployable due, in part, to her compensable injury. Specifically, Carpenter testified that plaintiff's limited IQ and functional illiteracy suited her only to unskilled jobs requiring simple, routine, repetitive tasks, but that plaintiff's current limited fine motor skills and the post-surgery restrictions put in place by Dr. Brenner made jobs based on such simple, repetitive tasks unsuitable for plaintiff. The result is that there are no jobs at all suitable for plaintiff to perform. Defendants failed to present any vocational evidence to rebut Carpenter's testimony.
I believe that Carpenter's testimony, together with plaintiff's testimony that she visited forty-six employers following her termination by defendant-employer and filled out employment applications (with her husband's help) for every employer that offered one, but failed to receive a single job offer, constitute evidence sufficient to meet plaintiff's burden that she was unable to obtain commensurate employment following termination by defendant-employer due to her job-related injury. Accordingly, I believe that the majority's conclusion to the contrary is unsupported by the evidence of record.
 * * * * * * * * * * *
For these reasons, I respectfully dissent.
This 15th day of June, 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER