***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. Defendant-employer and plaintiff are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and were so subject to and bound by the Act on December 2, 2007.
2. Defendant-employer is self-insured, with Key Risk Management Services, Inc. (now Corvel, Inc.) as the third-party administrator.
3. All parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of the parties.
4. All carriers have been correctly designated, and there are no questions as to insurance coverage of the parties.
5. Plaintiff's average weekly wage for this claim is $456.36, yielding a compensation rate of $310.26.
6. The following evidence was admitted into the record:
 a. Stipulated Exhibit Number 1, Pre-Trial Agreement
 b. Stipulated Exhibit Number 2, Industrial Commission Forms, Medical Records, Defendant's Responses to Plaintiff's First Set of Interrogatories and Request for Production of Documents and Personnel Actions
 c. Stipulated Exhibit Number 3, Correspondence from Plaintiff's Counsel, Payroll Records, Plaintiff's First Set of Interrogatories to Defendant, Plaintiff's Work Plans. By stipulation of the parties before the Full Commission, plaintiff's work plan and performance appraisal for 2005-2006 is added to the transcript of record at the end of the exhibits.
 d. Plaintiff's Exhibit Number 1, Job Search conducted by Plaintiff *Page 3 
7. Defendant's Exhibit Number 1, City-County Bureau of Identification [hereinafter "CCBI"] Arrest Information with handwritten notes, which purportedly contained admissible criminal history of plaintiff, did not comply with Rule 609 and was deemed inadmissible for impeachment purposes.
8. The issues before the Commission are:
 a. Whether defendant terminated plaintiff's employment on December 16, 2008, for misconduct; and
 b. Whether plaintiff is entitled to benefits pursuant to N.C. Gen. Stat. § 97-29 from December 16, 2008 until plaintiff returns to suitable employment?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 46 years old and completed the ninth grade.
2. In 2000, plaintiff began working for defendant-employer in dining services as a temporary employee for approximately one year. In 2004, plaintiff applied for another position in dining services. Defendant-employer hired plaintiff as a temporary dishwasher and cook. Based on his work performance as a temporary employee, plaintiff was hired as a permanent employee of defendant-employer on January 31, 2005.
3. On December 2, 2007, plaintiff sustained a compensable injury to his back, which was accepted by defendant as a medical only claim on a Form 60 filed April 17, 2008. *Page 4 
4. On December 4, 2007, plaintiff sought medical treatment at Rex Hospital for back pain. He was provided an out-of-work note from the date of his examination through December 7, 2007. Plaintiff was instructed to avoid lifting more than 20 pounds for five days. Plaintiff provided the note to Jack Johnson who worked in the dining services office. Plaintiff returned to work as scheduled.
5. On December 11, 2007, plaintiff sought treatment at Longview Chiropractic for continued back pain and was provided with a note to remain out of work until December 14, 2007. Plaintiff provided the note to Mr. Johnson.
6. On December 18, 2007, plaintiff sought treatment at Urgent Care, where he was diagnosed with a lumbar strain, given medications and prescribed physical therapy. Plaintiff was instructed to return to work on December 21, 2007 with light duty restrictions of lifting less than 20 pounds and to return for a follow-up evaluation in two to three weeks. Plaintiff provided the note to Mr. Johnson. Plaintiff was assigned to his regular duties. Defendant authorized physical therapy and a back brace on January 22, 2008.
7. On February 11, 2008, plaintiff returned to Urgent Care where he was instructed not to lift, push or pull more than 15 pounds until February 20, 2008. He was provided with a note to remain out of work from February 11, 2008 through February 20, 2008. He gave the work note to Mr. Johnson, and was assigned to his regular duties. Plaintiff testified that he experienced increased back pain while performing his regular duties.
8. Defendant-employer provided light duty work for plaintiff which was within his restrictions. Plaintiff's regular job of washing dishes and cleaning up was light duty with the exception of dealing with catering dishes. Plaintiff was instructed by his supervisor not to deal with the catering dishes. Plaintiff did not wash large pots or pans but washed small aluminum *Page 5 
pans that weighed less than two pounds and which were within his 40-pound lifting restriction. Plaintiff admitted at the Deputy Commissioner's hearing that he was able to perform the job duties. Plaintiff's supervisor felt his job performance was acceptable, with the exception of his absenteeism. The Commission does not find plaintiff's testimony credible concerning any job performance problems related to his compensable injury.
9. On March 19, 2008, plaintiff returned to Urgent Care where his 15-pound lifting restrictions were continued. He was also referred to Cary Orthopaedic Clinic for further evaluation. On March 31, 2008, plaintiff sought treatment at the emergency room of Rex Hospital for his ongoing low back pain for which he was referred to Raleigh Orthopaedic Clinic.
9. On April 10, 2008, Dr. Scott Sanitate evaluated plaintiff at Cary Orthopaedic Clinic. Dr. Sanitate assessed plaintiff with right lumbar facet syndrome versus an underlying degenerative disc disease. He ordered physical therapy, lidoderm patches and restricted plaintiff from lifting greater than 40 pounds and also instructed him to avoid repetitive lumbar flexion/extension. Eventually, plaintiff underwent an MRI ordered by Dr. Sanitate on May 16, 2008, which revealed mild disc bulging at L4-L5.
10. After Dr. Sanitate's release to return to work on April 10, 2008, plaintiff failed to return to work and failed to respond to phone calls from his supervisor concerning his absences. Although Dr. Sanitate did not authorize any absences after April 10, 2008, plaintiff was out of work and provided no medical documentation from April 10-25, 2008. On April 21, 2008 plaintiff was given a letter of intent to separate based on his absenteeism. Plaintiff was given a final warning for unacceptable personal conduct on April 28, 2008.
11. On June 19, 2008, Dr. Craig Derian evaluated plaintiff for a second opinion. Dr. Derian determined plaintiff had reached maximum medical improvement and assigned him a 5% *Page 6 
permanent partial disability rating to the back. He also agreed with Dr. Sanitate's work restrictions, but deemed them to be permanent work restrictions.
12. On July 10, 2008, Dr. Sanitate lifted plaintiff's restrictions, but he reinstated the work restrictions on August 25, 2008 based on plaintiff's report of increasing back pain after lifting heavy stacks of dishes and garbage bags. On September 15, 2008, Dr. Sanitate continued the lifting restriction.
13. On December 3, 2008, the Industrial Commission approved a Form 26A in which defendant agreed to pay plaintiff for the 5% permanent partial disability rating to the back.
14. On January 7, 2009 Dr. Sanitate released plaintiff to return to work with no restrictions.
15. Plaintiff was given a Notice of Investigatory Status and Notice of Pre-Dismissal Hearing on December 10, 2008. On December 16, 2008, defendant terminated plaintiff from employment for failing to fully and accurately disclose criminal convictions as required on the employment application. His termination was also based on his willful violation of departmental policy because plaintiff failed to provide medical documentation showing that he was restricted from any work following April 10, 2008 and failed to notify his supervisor when he was absent from work. His supervisor, Todd Pate, testified that after plaintiff was injured, his behavior changed and he stopped communicating with defendant-employer when he was not coming to work. After the compensable injury, plaintiff had 12 "no call, no show" absences for which he provided no medical excuses. On numerous occasions plaintiff also left the job early before his shift ended without notifying Mr. Pate and several times plaintiff worked on different shifts and worked different hours than his assigned shift. A non-injured employee would have been *Page 7 
discharged for the failure to follow established department policy by not working when scheduled and failing to report his absences to defendant-employer.
16. Mr. Pate testified and the Commission finds that plaintiff's absenteeism constituted sufficient misconduct for which he could have been terminated, without the falsification on the application. The Commission further finds by the greater weight of the evidence that plaintiff's termination was unrelated to his compensable injury.
17. Plaintiff admitted that he had been convicted of two felonies of armed robbery and common law robbery on December 13, 1984 and possession of a schedule II drug on April 20, 1992. He also was convicted of misdemeanor possession of a schedule II drug on December 9, 1993 and misdemeanor possession of a schedule II drug with intent to sell on February 23, 1994. Plaintiff listed only a 1990 drug conviction on the 2004 application for employment with defendant-employer.
18. Defendant's employment policy provides for immediate dismissal if an applicant provides false information on a job application. An applicant's criminal history was a consideration during the hiring process and if plaintiff had fully disclosed his criminal record, he would not have been hired by defendant-employer. The greater weight of the credible and competent evidence indicates that plaintiff's termination on December 16, 2008, had no relationship to his workers' compensation injury. Plaintiff was terminated for misconduct and fault unrelated to his compensable injury for which a non-disabled employee would ordinarily have been terminated by defendant-employer.
19. After plaintiff was terminated, plaintiff began to look for employment as evidenced by his job search log. Between December 22, 2008 and February 3, 2009, plaintiff *Page 8 
has submitted applications or inquired about work with 25 different employers. As of the date of the hearing before the Deputy Commissioner, plaintiff was unable to find employment.
20. There is insufficient evidence of record by which to prove by the greater weight that plaintiff's inability to obtain suitable employment was causally related to his compensable injury by accident. The record includes no expert medical or other evidence that plaintiff's physical restrictions prevented him from earning his pre-injury wages in other employment or that he was unable to obtain employment due to his compensable injury. If plaintiff had not been terminated for misconduct, he would have been able to continue his employment with defendant-employer. Therefore, plaintiff is not disabled within the meaning of the North Carolina Workers' Compensation Act because he retains the ability to earn wages which he was receiving at the time of his injury in the same or any other employment. Plaintiff has been unable to procure employment due to causes and conditions unrelated to his workers' compensation injury.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On December 2, 2007, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to payment by defendant for medical treatment causally related to the compensable injury by accident. N.C. Gen. Stat. §§ 97-25, 97-25.1.
3. In determining whether plaintiff's termination from employment on December 16, 2008, precludes him from receiving workers' compensation benefits, initially defendant must prove, (1) plaintiff was terminated for his conduct, (2) the same misconduct would have resulted *Page 9 
in the termination of a non-disabled employee, and (3) the termination was unrelated to plaintiff's compensable injury. An employer's successful demonstration of such evidence is deemed to constitute a constructive refusal by the employee to perform suitable work, and bars plaintiff from receiving benefits for lost earnings.
4. In this case plaintiff was terminated from his employment based upon his own misconduct by his failure to disclose criminal convictions as required on the employment application, by his failure to provide medical documentation showing that he was restricted from any work following April 10, 2008, and by his failure to notify his supervisor when he was absent from work. This misconduct was not related to his disability and would be grounds for the discharge of any non-disabled employee. Therefore, plaintiff is deemed to have constructively refused suitable employment and is therefore barred from seeking benefits for lost earnings.McRae v. Toastmaster, Inc.,358 N.C. App. 488, 597 S.E. 2d 695 (2004); Seagraves v. Austin Co.of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996). If plaintiff were able to show that he was unable to perform this suitable work or find comparable work as a direct result of his work-related injuries, he would be entitled to benefits.McRae v. Toastmaster, Inc., supra; Seagraves v. Austin Co. ofGreensboro, supra. However, in this case, plaintiff failed to show that he was unable to find comparable work due to his physical restrictions from his compensable injury. McRae v.Toastmaster, Inc., supra.
4. Under Seagraves, a plaintiff is entitled to benefits if he can demonstrate that work-related injuries, and not the circumstance of the termination, prevented him from either performing alternative duties or finding comparable employment. The test is an inquiry into the circumstances of the injured employee's termination to determine whether the failure to perform *Page 10 
is due to an inability to perform or an unwillingness to perform.McRae v. Toastmaster, Inc., supra.
5. Plaintiff failed to demonstrate that any inability to perform the work for defendant-employer was causally related to his compensable injury. Therefore, plaintiff is not entitled to payment by defendant of total disability compensation after his termination on December 16, 2008. McRae v. Toastmaster, Inc., supra.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for total disability compensation subsequent to December 16, 2008, must be, and is hereby, denied.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of his compensable injury by accident on December 2, 2007.
3. Defendant shall pay the costs due the Commission.
This 29th day of January, 2010.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 CONCURRING: S/___________________ DIANNE C. SELLERS *Page 11 
COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
 S/___________________ DANNY LEE McDONALD COMMISSIONER