DIETZ, Judge.
 

 *183
 
 When a law enforcement officer employed by the State is injured in the line of duty, state law provides that the officer will continue to be paid her full salary even if she can no longer perform her regular job duties. But this law also provides that, if the officer "refuses to perform any duties to which the person may be properly assigned," the applicable state agency may cease paying the officer "as long as the refusal continues." N.C. Gen.Stat. § 143-166.19.
 

 Plaintiff Connie Yerby was injured while working as a juvenile justice officer with the North Carolina Department of Public Safety. Roughly a month after the injury, her doctor authorized her to return to work on the condition that she not perform any duties requiring her to lift her right arm. DPS assigned Yerby to a "light-duty" role at a juvenile center that occasionally would place her in close proximity to violent juvenile offenders. Yerby refused this role because, in light of her doctor's restriction on the use of her arm, she was concerned that she could not adequately defend herself from a violent attack. DPS then ceased paying her salary.
 

 Yerby challenged DPS's decision in the Industrial Commission, which reinstated her salary continuation because the light-duty role offered by DPS was "not suitable" under N.C. Gen.Stat. §§ 97-29 and 97-32. This Court reversed, holding that the Industrial Commission improperly applied the "suitable employment" analysis from the Workers' Compensation Act instead of the "duties to which the person may be properly assigned" standard from N.C. Gen.Stat. § 143-166.19.
 
 Yerby v. N.C. Dep't of Pub. Safety,
 

 232 N.C.App. 515
 
 ,
 
 754 S.E.2d 209
 
 , 211 (2014).
 

 On remand, the Industrial Commission again reinstated Yerby's salary continuation, this time concluding that, because her work restriction would render her "unable to adequately defend herself from students, who were often violent juvenile offenders," the duties proposed by DPS were not duties to which Yerby may be properly assigned.
 

 DPS again appealed, this time arguing that the Industrial Commission's analysis violated this Court's mandate from
 
 Yerby I
 
 and again applied the wrong legal standard. For the reasons discussed below, we hold that the Industrial Commission engaged in the proper analysis to determine whether the proposed work duties were duties to which the officer may be properly assigned. Accordingly, we reject DPS's arguments and affirm the Commission's opinion and award.
 

 *547
 

 Facts and Procedural History
 

 *184
 
 The North Carolina Department of Public Safety has employed Plaintiff Connie Yerby as a juvenile justice officer and youth monitor since 2006. Yerby's role required her to monitor students in a juvenile facility-many of whom are violent offenders. Although Yerby was never assaulted by a student at work, she came "close to it." Her job therefore required her to be able to physically restrain a violent juvenile offender if necessary.
 

 On 5 December 2011, Yerby fell at work and injured her head, neck, shoulder, back, and right arm. DPS began paying salary continuation benefits under N.C. Gen.Stat. § 143-166.16.
 

 On 11 January 2012, DPS referred Yerby to Dr. William de Araujo, who diagnosed Yerby with a right rotator cuff strain as well as cervical and thoracic strains. Dr. Araujo permitted Yerby to return to light-duty work, provided that she perform no lifting with her right arm.
 

 DPS requested that Yerby return to work on 23 January 2012 and offered her a "light-duty" role that involved supervising, monitoring, and conducting bed checks of students in the housing units and performing housing unit inspections. In this role, Yerby was not to be the first staff member to enter a juvenile's housing unit, and she was not to restrain students or perform any lifting with her right arm.
 

 Yerby did not return to work as requested by DPS due to her concerns that her injuries would limit her ability to defend herself from a possible attack by a violent juvenile resident. On 10 February 2012, DPS notified Yerby that it was terminating her salary continuation payments as of 23 January 2012 because she failed to return to work as requested.
 

 On 10 February 2012, Yerby responded that she would return to work on the conditions that she would not have to work alone, would not have to enter the students' rooms, and would not have to be in direct contact with the students. DPS denied Yerby's requested conditions.
 

 On 5 March 2012, Yerby filed an Industrial Form 33 Request for Hearing in order to object to the termination of her salary continuation. At the hearing, Yerby explained that she refused DPS's proposed light-duty role because she would be unable to defend herself from a juvenile attack due to her injuries. A vocational rehabilitation expert also testified that the light-duty role would create a "constant element of danger due to the chance of being put in direct contact with students." This expert explained that, even though Yerby would not be required to
 
 *185
 
 restrain a student in this role, she would not be immune from a student attack and could not properly defend herself if such an attack occurred.
 

 The Deputy Industrial Commissioner concluded that DPS wrongfully terminated Yerby's salary continuation and that Yerby was entitled to the reinstatement of her salary from 23 January 2012 through 9 June 2012, the date she ultimately returned to a light-duty role at DPS. DPS appealed to the Full Industrial Commission, which concluded that Yerby was entitled to reinstatement of her salary continuation because the light-duty role offered by DPS was "not suitable" under N.C. Gen.Stat. §§ 97-29 and 97-32.
 

 DPS then appealed to this Court. We reversed, holding that the Industrial Commission improperly applied the "suitable employment" standard under N.C. Gen.Stat. §§ 97-29 and 97-30 rather than the "duties to which the person may be properly assigned" standard under N.C. Gen.Stat. § 143-166.19.
 
 Yerby v. N.C. Dep't of Pub. Safety,
 

 232 N.C.App. 515
 
 ,
 
 754 S.E.2d 209
 
 , 211 (2014). We remanded and directed the Commission "to apply the proper legal standard."
 

 On remand, the Industrial Commission again concluded that Yerby was entitled to salary continuation benefits from the date of her injury to 9 June 2012. But this time, the Commission reasoned that the duties involved in DPS's proposed light-duty role were not "duties to which [s]he may be properly assigned[.]" The Commission explained that the duties proposed by DPS put Yerby at a "heightened risk of harm" because her injuries left her unable to "adequately defend herself from students, who were often violent
 
 *548
 
 juvenile offenders." DPS timely appealed from the Full Commission's amended opinion and award.
 

 Analysis
 

 Our review of an opinion and award from the Industrial Commission is limited to "whether the evidence presented before the Commission supports its factual findings, and whether those findings support the Commission's conclusions of law in its opinion."
 
 McRae v. Toastmaster, Inc.,
 

 358 N.C. 488
 
 , 496,
 
 597 S.E.2d 695
 
 , 701 (2004).
 

 I. Compliance with this Court's mandate
 

 DPS first argues that the Commission failed to follow this Court's "remand directive" in its amended opinion and award. Specifically, DPS contends that the Industrial Commission impermissibly "applied an arbitrary and case specific standard" to determine whether the duties proposed by DPS were duties to which Yerby may be properly assigned. We disagree.
 

 *186
 
 The Industrial Commission followed this Court's mandate and applied the proper legal standard as directed: it cited N.C. Gen.Stat. § 143-166.19 (the applicable statute) and quoted the specific statutory language we instructed the Commission to apply ("duties to which she may be properly assigned"). The Commission found that the duties DPS sought to assign "would place Plaintiff at a heightened risk of harm due to her physical restriction" because she "would be unable to adequately defend herself from students, who were often violent juvenile offenders." Based on this finding, the Industrial Commission reinstated Yerby's salary continuation because the duties DPS attempted to impose on Yerby were not ones "to which she may be properly assigned." This is precisely the sort of analysis that should be done by the Commission in a § 143-166.19 dispute, and it is what we expected when we remanded this case. Accordingly, we reject DPS's argument that the Commission ignored this Court's mandate.
 

 II. Use of terms also used in the Workers' Compensation Act
 

 DPS next argues that the Industrial Commission wrongly applied the "suitable employment" standard from the Workers' Compensation Act-the same error that caused this Court to reverse and remand in
 
 Yerby I
 
 -because the Commission's analysis uses language from the "suitable employment" provisions of the Workers' Compensation Act. We disagree.
 

 To be sure, the Commission's analysis used the phrase "physical restrictions and limitations," a phrase that appears in the "suitable employment" statute in the Workers' Compensation Act. But the Commission did not cite the Workers' Compensation Act in its analysis, and nothing suggests the Commission was applying the "suitable employment" standard from the Act in this case. Rather, the Commission appears simply to have borrowed language used in the Workers' Compensation Act to accurately describe Yerby's factual situation. This is not reversible error-we are unaware of any authority that requires the Industrial Commission to employ exclusively original prose in its opinions.
 
 [1]
 

 III. Prior decisions from the Industrial Commission
 

 Finally, DPS argues that the Industrial Commission's analysis in this case conflicts with its analysis in
 
 Dobson v. N.C. Department of Public
 

 *187
 

 Safety,
 
 I.C. No. W90912 (June 4, 2014). According to DPS,
 
 Dobson
 
 stands for the proposition that, if the work duties the agency seeks to assign comply with a physician's recommended work restrictions, those duties are
 
 per se
 
 properly assigned. DPS relies on the following language in
 
 Dobson
 
 for its position:
 

 The duties of the correctional officer position were not properly assigned as they were not within Plaintiff's restrictions as assigned by his physicians. As such, the Full Commission finds that Plaintiff is entitled to the reinstatement of salary continuation benefits....
 

 *549
 
 This language does not mean what DPS claims. It establishes that work duties that
 
 violate
 
 a physician's work restriction are not duties that may be properly assigned. So, for example, if a physician restricted the employee to light duty with no heavy lifting, the employer could not properly assign the employee to move heavy boxes.
 

 We agree with that reasoning. But it does not follow from the
 
 Dobson
 
 reasoning that work duties that do not violate a physician's work restrictions are
 
 per se
 
 properly assigned. As this case indicates, even when an officer is medically capable of performing certain work duties under normal circumstances, other factors-such as the risk that the normal circumstances unexpectedly devolve into violent confrontations with juvenile offenders-may compel the Industrial Commission to conclude that those duties are not ones to which the officer properly may be assigned. Accordingly, we reject DPS's argument.
 

 Conclusion
 

 For the reasons stated above, we reject the Department of Public Safety's arguments and affirm the Industrial Commission's amended opinion and award.
 

 AFFIRMED.
 

 Judges STROUD and TYSON concur.
 

 [1]
 

 The same is true for the Commission's use of the term "heightened risk," a term found in a separate portion of the Salary Continuation Plan statutes.
 
 See
 
 N.C. Gen.Stat. § 143-166.14.