* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications. Accordingly the Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as: *Page 2 
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and Spartacraft, Inc.
3. Plaintiff's average weekly wage was $391.00 per week, which results in a compensation rate of $260.67.
4. AIG Claims Services, Inc. was the carrier on the risk for employer.
 * * * * * * * * * * * FINDINGS OF FACT
1. Plaintiff, age 61 at the time of hearing, worked as a "jitterbug" sander in Spartacraft's flag display box manufacturing plant beginning in May 2003. That job involves repetitive use of the hands and arms, plus exposure to substantial vibration to both upper extremities. Plaintiff worked 48 to 50 hours per week and sanded 100 to 110 flag display boxes per day. The flag boxes are triangular shaped about 1.5 feet on each side. Plaintiff began to have pain, which continued to worsen, in both hands and elbows in the fall of 2003. Plaintiff reported the problems to her supervisor, Tim Holman, who replied, "That goes with the job."
2. On the morning of January 28, 2004, plaintiff opened her car door to exit her vehicle, located in the defendant's parking lot, to report to work. When she did, she slipped on a patch of ice in the parking lot. Her feet slid out from under her causing her to fall onto her buttocks. While attempting to get up, her left foot struck another car. As she tried to get on her feet, she fell four times. During all of this, the plaintiff also struck her head against the bottom part of her car door. *Page 3 
3. Plaintiff talked about the accident that morning to Bradley Houser, a supervisor, and to another supervisor, Tim Holman, the following day. The company made an entry on its OSHA injury log concerning plaintiff's fall.
4. On January 29, 2004, plaintiff saw Dr. John Dembski, her primary care physician, regarding her fall. Dr. Dembski's notes indicate the plaintiff was complaining of low back to neck pain.
5. Dr. Dembski also treated plaintiff's hands and arms and diagnosed epicondylitis. Dr. Dembski testified, and the Full Commission finds as fact, that plaintiff's epicondylitis was caused by, and a greater risk factor from, the plaintiff's jitterbug sander occupation. Dr. Dembski was less certain the fall at work caused the elbow problems.
6. Plaintiff saw Dr. Warren Burrows, a Charlotte hand surgeon who has considerable experience in occupational disease cases, on September 1, 2004. Dr. Burrows has visited a number of factories and has seen jitterbug sanding performed. In Dr. Burrows' "pretty confident" opinion, plaintiff has developed cubital tunnel syndrome and/or epicondylitis caused by the jitterbug sanding job which exposes persons who do that job to higher risk than members of the general population not similarly exposed.
7. Further, it is Dr. Burrows' opinion that the January 28, 2004 fall at work was a secondary contributing cause of the employee's right cubital tunnel syndrome/epicondylitis and also the employee's left and right arm sprains. Dr. Burrows recommended that plaintiff not return to jitterbug sanding or other vibratory job.
8. Dr. Stephen David, an Asheville orthopaedic surgeon who concentrates in spinal problems and who is also chairman of the Department of Orthopedic Surgery at Memorial Mission Hospital, began treating plaintiff on April 27, 2005 upon referral of Dr. Dembski. Dr. David *Page 4 
diagnosed cervical and lumbar stenosis and spondylosis which he is confident has been substantially/materially aggravated by the January 28, 2004 fall at work. Dr. David also confirmed the occupational disease found by Dr. Dembski and Dr. Burrows.
9. As of the date of the hearing before the Deputy Commissioner, treatment by Dr. David was ongoing, including physical therapy, Tens Unit and medications, and plaintiff was not at maximum medical improvement. It is uncertain whether plaintiff will ultimately undergo a 3-level cervical fusion as recommended by Dr. David for treatment of the injury at work. Dr. David has restricted plaintiff to no overhead work, ten (10) pounds lifting, avoid bending, stooping, twisting, and alternate sit/stand.
10. Spartacraft fired plaintiff on July 2, 2004 saying she had too many absences. Part of the absences used by the employer for the termination included days in which Dr. Dembski had the employee on no work because of the injury and/or the occupational disease.
11. Plaintiff has conducted a reasonable job search, without success. She received 24 weeks of Employment Security benefits at $188.00 per week for which defendants are entitled to a credit. The employee has also been approved for Social Security disability because of her left arm injury at work and as well as a bipolar condition.
12. Based upon the medical testimony, the Full Commission finds that plaintiff's job as a jitterbug sander placed her at an increased risk of developing the occupational disease epicondylitis and in fact caused that disease. The Full Commission also finds that the falls in the parking lot constituted a compensable injury by accident that aggravated plaintiff's condition contributing to her inability to earn wages.
13. Because of plaintiff's age, work experience, education and restrictions resulting from her compensable injuries and occupational disease, plaintiff is unable to earn wages in the *Page 5 
same or any other employment.
14. In their brief to the Full Commission, defendants concede that plaintiff may have sustained an injury by accident on January 28, 2004 and may also have developed a temporary condition of either epicondylitis or cubital tunnel syndrome in her employment with Spartacraft. They argue, however, that plaintiff failed to meet her burden of proving that she was disabled as a result of either of these conditions. They also argue that plaintiff was not entitled to compensation because she constructively refused to work.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact the full commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On January 28, 2004, plaintiff sustained a compensable injury by accident to her cervical spine, lumbar spine, head and elbows when she fell on ice in the company parking lot. N.C. Gen. Stat. § 97-2.
2. On January 28, 2004, plaintiff also contracted an occupational disease, cubital tunnel syndrome and/or epicondylitis, which was caused by or aggravated by her employment with the defendant. N.C. Gen. Stat. § 97-53 (13). Plaintiff's employment created a greater risk of contracting and aggravating plaintiff's occupational disease than members of the general population who are not exposed to that type employment. N.C. Gen. Stat. § 97-53 (13).
3. Being unable to earn wages in the same or any other employment by reason of her compensable injuries and compensable occupational disease, plaintiff is entitled to temporary total disability compensation in the amount of $260.67 per week from July 2, 2004, and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29. *Page 6 
4. Defendants are entitled to a credit for unemployment benefits received by plaintiff in the amount of $4,512.00. N.C. Gen. Stat. §97-42.1.
5. Plaintiff did not constructively refuse to work. Spartacraft admitted that part of the reason they fired her was absences from work resulting from her compensable injury and occupational disease.Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397
(1996), McRae v. Toastmaster, Inc., 358 N.C. 488, 597 S.E.2d 695 (2004).
6. Plaintiff is entitled to medical compensation by reason of her compensable injuries and compensable occupational disease. At the time of the hearing before the Deputy Commissioner, plaintiff had not reached maximum medical improvement and is entitled to continuing medical compensation at least until she does.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to counsel fee, defendants shall pay to plaintiff temporary total disability compensation at the rate of $260.68 per week beginning July 2, 2004 and continuing until further orders of the Industrial Commission. The compensation that has accrued shall be paid in a lump sum, minus a credit in the amount of $4,512.00 for unemployment benefits received by plaintiff. Defendants shall pay interest at 8% per year from October 11, 2005, the date of the hearing before the Deputy Commissioner.
2. Defendants shall pay directly to plaintiff's counsel 25% of the net lump sum set forth in paragraph 1 above. Thereafter defendants shall pay to plaintiff's counsel every fourth check. *Page 7 
3. Defendants shall pay all medical expenses incurred by plaintiff as a result the January 28, 2004 injury by accident and as a result of the plaintiff's occupational disease, cubital tunnel syndrome and/or epicondylitis.
4. Defendants shall pay the costs.
This third day of October 2006.
 S/_________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________________ PAMELA THORPE YOUNG COMMISSIONER
DISSENTING:
 S/_________________ BUCK LATTIMORE CHAIRMAN *Page 8