***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and as part of the Pre-trial Agreement as:
 STIPULATIONS *Page 2 
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates, an employment relationship existed between plaintiff and defendant-employer.
3. On all relevant dates, defendant-employer was covered by a workers' compensation insurance policy issued by defendant-carrier.
4. On September 6, 2008, plaintiff sustained a compensable injury by accident to her left knee.
5. Plaintiff's average weekly wage is $415.87, which yields a compensation rate of $277.25 per week.
6. Plaintiff received unemployment benefits in the amount of $222.00 per week for 9 5/7 weeks from January 24, 2009 to April 1, 2009. Plaintiff has received unemployment benefits in the amount of $247.00 per week, beginning April 2, 2009 and continuing through the date of the execution of the pre-trial agreement.
7. The parties stipulated to the admissibility of the following documents, which were received into evidence:
a. Exhibit #1: I.C. Forms, medical records, discovery, incident report, correspondence, job logs.
8. The issues before the Full Commission are: whether plaintiff's knee problems and the medical treatment she has sought as a result are causally related to the injury by accident that occurred on September 6, 2008; whether plaintiff is disabled as a result of the knee injury sustained in the injury by accident on September 6, 2008; and whether plaintiff is entitled to compensation and if so, what amount. *Page 3 
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 46 years old. Plaintiff is a high school graduate, with some additional non-credit courses in typing and business. Plaintiff has worked a variety of jobs, including providing care to handicapped with companies in North Carolina and Florida, which she likened to a CNA position, and as a bookbinder with Duke University, repairing and restoring books.
2. Plaintiff began working for defendant-employer as a cashier in January 2008. She worked 30-40 hours per week and earned $11.00 per hour. Plaintiff's job tasks included operating the register, as well as sorting clothes and hanging them on the racks. Her job duties required her to be on her feet for essentially her entire shift.
3. On September 6, 2008, plaintiff tripped over a metal tote basket and landed on her left kneecap on the concrete floor. Immediately afterward, she developed swelling and severe pain in the knee. Plaintiff reported the incident to her assistant manager and an incident report was prepared. Plaintiff finished out the shift with cold compresses on her knee.
4. On Monday morning, September 8, 2008, the incident report was reviewed by the area manager and plaintiff was sent to Concentra, accompanied by an assistant manager. Plaintiff presented to Maria Gluys, physician's assistant to Dr. Henry Adomonis. Ms. Gluys diagnosed a knee contusion, dispensed ibuprofen, scheduled physical therapy, and assigned light-duty work restrictions. Plaintiff continued to receive conservative treatment at Concentra over the next several weeks, during which time she remained on light duty *Page 4 
restrictions. Light duty restrictions included no squatting, kneeling, climbing stairs or ladders and sitting 10 minutes out of every hour.
5. Upon plaintiff's return to work, she was given the position of sorting clothes and was provided with a place to sit and the opportunity to ice her knee as required. There is no evidence that defendant-employer asked plaintiff to perform duties outside of her restrictions. If plaintiff did perform duties outside her restrictions, it was a decision plaintiff made on her own.
6. Plaintiff returned to Concentra for follow-up on October 6, 2008, at which time she was diagnosed with underlying chondromalacia patellae, aggravated by knee contusion. Plaintiff was referred to an orthopaedist, Dr. Andrew Jones.
7. Plaintiff presented to Dr. Jones on October 15, 2008. Dr. Jones confirmed the diagnosis of knee contusion and suspected a plica band or obscure meniscal tear. Dr. Jones restricted plaintiff to sitting 75% of the work day and indicated he would consider a diagnostic arthroscopy, if she did not improve in three weeks.
8. On October 18, 2008, plaintiff had an unrelated hypertensive crisis while at work and was hospitalized overnight at Durham Regional Hospital and treated by Dr. Junyang Lou. Plaintiff followed up with doctors at Duke Outpatient Clinic, who wrote her out of work.
9. Plaintiff was terminated by defendant-employer on November 6, 2008, because she had not returned to work or properly submitted the requested medical information. Plaintiff was not eligible for FMLA leave since she had not been employed for a year. Although plaintiff indicated that Dr. Lou did submit the requested information to the employer, plaintiff submitted no evidence to verify this assertion. Defendant-employer indicated they did not receive the requested medical documentation. A letter dated November 6, 2008, from human resources director Christopher Hash notified plaintiff that defendant-employer had not received the *Page 5 
mandatory medical documentation they requested. Fitness for duty paperwork was sent by defendant-employer to plaintiff on October 31, 2008, with instructions to complete and return the paperwork by November 5, 2008. Plaintiff was also aware that termination could result, if the medical documentation was not properly submitted. There is no evidence that plaintiff was terminated for any reason related to the *Page 6 
workplace injury. The Full Commission finds plaintiff was terminated for not complying with defendant-employer's company policies, a reason for which any non-injured employee would be terminated.
10. Following the hypertensive incident, plaintiff returned to Dr. Jones on November 12, 2008. Dr. Jones noted that plaintiff's knee condition was worsening and recommended physical therapy at Concentra. Defendant-employer refused to authorize the therapy and did not provide any further treatment for plaintiff's knee injury.
11. Plaintiff began receiving unemployment benefits on January 24, 2009. As stipulated by the parties, plaintiff received $222.00 per week until April 1, 2009, and $247.00 per week thereafter. She was still receiving unemployment benefits as of the date of the hearing before the Deputy Commissioner.
12. Plaintiff next saw Dr. Jones on March 13, 2009, with complaints of continued left knee pain and swelling. The gap in treatment occurred because plaintiff developed kidney problems in January 2009 and had surgery in February 2009. During the gap in knee treatment, plaintiff did not sustain any other injury to the knee. On March 13, 2009, Dr. Jones recommended a diagnostic and potentially therapeutic arthroscopy.
13. Dr. Jones wrote plaintiff completely out of work on March 16, 2009, and performed arthroscopic surgery on the left knee on April 2, 2009. Following the surgery, Dr. Jones diagnosed plaintiff with lateral subluxation of the patella, which bore no relation to her workplace injury, and chondral defect of the medial femoral condyle, essentially a defect in the articular cartilage, which was aggravated by plaintiff's compensable injury by accident at defendant-employer. Following surgery, plaintiff resumed formal physical therapy, including aquatic therapy. Plaintiff remained symptomatic after surgery, with pain and swelling.
14. On July 10, 2009, Dr. Jones released plaintiff to light-duty work. The most recent work restrictions, issued September 4, 2009, include: no standing greater than one to two hours; no climbing, stooping, squatting, crawling, or kneeling; no carrying heavy material; and no duty involving unprotected heights. Dr. Jones opined that plaintiff cannot return to her previous position at defendant-employer and can safely stand for only two hours in an eight hour shift. He continues to provide treatment for plaintiff.
15. Following her release to light duty, plaintiff began taking classes at Durham Tech to obtain her CNA I license, which she was on course to obtain in December 2009. Plaintiff also began a diligent job search, which involved submitting applications to over 50 employers between the date of her release and the date of the hearing before the Deputy Commissioner. To date, plaintiff has not been able to obtain suitable employment.
16. Dr. Jones opined that the arthroscopic procedure he performed on April 2, 2009, revealed two different problems — a "long standing . . . imbalance in the way her kneecap tracked on the front of her knee," as well as "an area of loss of the bearing surface that covers the cartilage. . . ." Dr. Jones noted that there was reactive tissue in plaintiff's knee, some of which looked "freshly reactive," while some of it appeared to have "been there for quite a while."
17. Dr. Jones also noted that the area of cartilage loss corresponded to the part of the knee where plaintiff landed when she fell on September 6, 2008. Dr. Jones found some evidence in her knee of the contusion she sustained as the result of the fall. Accordingly, based upon the *Page 7 
location of the inflamed tissue along with the corresponding contusion, the lack of prior knee problems and the failure of her knee to recover after the workplace fall, Dr. Jones opined to a reasonable degree of medical certainty and the Full Commission finds that plaintiff's workplace fall resulted in the localized inflammation, which in turn necessitated the knee arthroscopy. While plaintiff did have other issues in her knee, Dr. Jones noted that the workplace injury and the resulting aggravation of her condition "made a big impact in her life."
18. Dr. Jones is still treating plaintiff. When he last saw her in the fall of 2009, he noted that her condition "wasn't changing a lot." Dr. Jones' current restrictions for plaintiff include "no prolonged standing or walking more than one to two hours." He added that he thought those restrictions could be permanent. He opined that plaintiff was not in need of a total knee replacement and that she had reached maximum medical improvement as of the last date he had given her a work note, September 4, 2009. He opined that a permanent partial impairment rating of 5% to plaintiff's left lower extremity would be "reasonable;" however, no formal rating has been given.
19. Plaintiff's average weekly wage is $415.87, which yields a compensation rate of $277.25 per week.
20. On September 8, 2008, plaintiff suffered an injury by accident arising out of and in the course of her employment with defendant-employer. As a result of the injury by accident, plaintiff sustained a contusion to her left knee which eventually necessitated arthroscopic surgery and resulted in permanent restrictions that have rendered her temporarily totally disabled from employment.
 *********** *Page 8 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on September 6, 2008. N.C. Gen. Stat. § 97-2(6).
2. Once the compensability of a claim is admitted or proven, plaintiff is not required at any point thereafter to prove the causal connection between the particular injury and the resultant treatment prescribed and the work accident, and there is a presumption that any additional medical treatment is directly related to the compensable injury. Parsons v. Pantry, Inc.,126 N.C. App. 540, 542 485 S.E.2d 867 (1997).
3. Defendants may overcome the Parsons presumption by proving that any additional treatment requested or presented by plaintiff, as part of the initial compensable injury is unrelated to the initial incident. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. reviewimprovidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006).
4. The Full Commission concludes from the greater weight of the expert medical testimony that plaintiff's subsequent knee condition, which necessitated surgery and resulted in her disability from work, is causally related to the compensable injury by accident of September 6, 2008. Accordingly, plaintiff is entitled to temporary total disability compensation at the rate of $277.25 per week for the period during which she was out of work as a result of the compensable injury by accident. N.C. Gen. Stat. § 97-29.
5. In determining whether plaintiff constructively refused suitable employment, so as to bar her from receiving benefits under the Act, the Court of Appeals applied a balancing test inSeagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).Under *Page 9 
the Seagraves test, to bar payment of benefits, an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury. Id.
6. An employer's successful demonstration of such evidence is "deemed to constitute a constructive refusal" by the employee to perform suitable work, a circumstance that would bar benefits for lost earnings, "unless the employee is then able to show that his or her inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to the injury, is due to the work-related disability." Seagraves v. Austin Co. ofGreensboro, supra, at 234, 472 S.E.2d at 401. If the greater weight of the evidence shows that an employee's current unemployment status is the result of job-related injuries, the employer remains responsible to pay compensation arising out of plaintiff's job-related injury. Under such circumstances, the fact that the employee was fired for unrelated misconduct is irrelevant because the employee's termination has no bearing on either the employee's existing compensable injury or how that injury affects his or her ability to find other employment. McRae v. Toastmaster, Inc.,358 N.C. 488, 597 S.E. 695 (2004)
7. In the instant case, plaintiff's termination from employment for not complying with defendant-employer's company policies constituted constructive refusal to accept suitable employment, in that the greater weight of the evidence presented showed plaintiff's termination was for misconduct that was unrelated to her work-place injury and was for reasons any non-injured employee would have been subject to termination. Therefore, plaintiff's entitlement to temporary total disability compensation ended on November 6, 2008, the date of her termination of employment with defendant-employer. Seagraves v. Austin Co. of Greensboro,supra. *Page 10 
8. Plaintiff's unemployment status changed on April 2, 2009, when she underwent surgery related to her injury by accident and was placed on permanent work restrictions by Dr. Jones. Therefore, plaintiff's current unemployment status is due to plaintiff's job-related injuries, the subsequent surgery, and the permanent restrictions imposed by Dr. Jones following the surgery. Plaintiff is entitled to payment by defendants of total disability compensation beginning on April 2, 2009 and continuing until plaintiff returns to work at her previous wages or until further Order of the Commission. N.C. Gen. Stat. § 97-29.
9. Defendants are entitled to a setoff based upon the unemployment benefits received by plaintiff beginning on April 2, 2009 and continuing. N.C. Gen. Stat. § 97-42.1.
10. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the time limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendants shall pay total disability compensation to plaintiff at the rate of $277.25 per week beginning April 2, 2009 and continuing until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. A reasonable attorney's fee in the amount of 25% is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the *Page 11 
accrued amount due plaintiff and thereafter by deducting every fourth compensation check due plaintiff.
3. Defendants shall deduct from plaintiff's award an amount equal to the unemployment benefits she received beginning on April 2, 2009 and continuing.
4. Defendants shall pay medical expenses incurred or to be incurred when medical bills have been submitted according to established Industrial Commission procedures.
5. As plaintiff has not received a formal rating to her left lower extremity, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
6. Defendants shall pay the costs.
This 29th day of October, 2010.
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ PAMELA T. YOUNG CHAIR
 S/_________________ DANNY LEE McDONALD COMMISSIONER