***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments before the Full Commission. The Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 *********** EVIDENTIARY MATTERS
Plaintiff filed a motion dated June 2, 2011, to submit additional evidence of billing records from Raleigh Orthopaedic Clinic regarding Plaintiff's treatment with Dr. Mikles. Defendants did not object. The Full Commission, it its discretion, hereby grants Plaintiff's motion. The medical billing records from Raleigh Orthopaedic Clinic labeled as Plaintiff's Exhibit A to Plaintiff's motion to submit additional evidence is hereby admitted in the record. *Page 2 
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, and in the executed pre-trial agreement, as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employment relationship existed between Defendant-Employer and Plaintiff on September 30, 2009.
3. On September 30, 2009, Defendant-Employer was covered by a workers' compensation insurance policy issued by Defendant-Carrier.
4. All parties have been properly designated, and there is no question as to joinder, nonjoinder, or misjoinder of parties.
5. On September 30, 2009, Plaintiff suffered an admittedly compensable injury by accident to her back in the course and scope of her employment with Defendant-Employer.
6. On the date of injury, Plaintiff's average weekly wage was $852.85, which yields a compensation rate of $568.60.
 *********** ISSUES
1. Is Plaintiff disabled as a result of her compensable back injury?
2. Have Defendants met their burden of establishing each element of the Seagraves defense? *Page 3 
3. To what indemnity benefits is Plaintiff entitled as a result of the injury by accident of September 30, 2009?
 ***********
The following were submitted as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement;
2. Stipulated Exhibit Number 2, Industrial Commission Forms, Medical Records, Discovery Responses and Plaintiff's Job Search Logs;
3. Plaintiff's Exhibit Number 1, Job Description of LPN Charge Nurse;
4. Plaintiff's Exhibit Number 2, Employee Counseling Form dated November 4, 2009;
5. Plaintiff's Exhibit Number 3, Employee Counseling Form dated November 10, 2009;
6. Plaintiff's Exhibit Number 4, Medication Administration Records;
7. Defendants' Exhibit Number 1, House Rules, pages 14 to 17; and
8. Defendants' Exhibit Number 2, Employee Handbook Acknowledgement Certification signed by Plaintiff.
 ***********
The following was received into evidence by the Deputy Commissioner as:
 DEPOSITIONS
1. Oral deposition of Mark Mikles, M.D., taken on August 16, 2010.
 ***********
Based upon the competent evidence record, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. At the time of the hearing before the Full Commission, Plaintiff was 36 years of age. At the time of her compensable injury by accident, Plaintiff lived in Sanford, North Carolina. Plaintiff now lives in Greenville, South Carolina. Plaintiff is a high school graduate and has been licensed as a Licensed Practical Nurse (LPN) since 1994. Since being licensed, she has worked exclusively in the nursing profession.
2. Plaintiff began working as an LPN for Defendant-Employer on February 25, 2009. Defendant-Employer is a skilled nursing and rehabilitation facility that hosts approximately 130 in-house patients at any given time.
3. The LPN position with Defendant-Employer involves direct patient care. As Melanie Johnson, Defendant-Employer's Director of Nursing, testified, the position is a "heavy duty" job that requires lifting of a minimum of 50 pounds. Plaintiff had no trouble performing the job prior to her work-related injury.
4. In the seven months Plaintiff worked for Defendant-Employer before her injury, Plaintiff was never disciplined, admonished, or reprimanded for any reason.
5. On September 30, 2009, Plaintiff sustained a compensable injury to her back while performing her nursing duties for Defendant-Employer. At the time of the injury Plaintiff was leaning over a patient's bed to administer medication. She was leaning over the bed "a pretty good while" because the patient wanted to finish drinking her water. When Plaintiff straightened up, she felt her back tighten, and by the end of her shift the pain in her back was so severe she could barely stand up straight.
6. Immediately after the injury occurred, Plaintiff reported it to Melanie Johnson and completed an incident report. Defendants filed an Industrial Commission Form 63, *Page 5 Notice to Employee of Payment of Compensation WithoutPrejudice, for medical benefits only and have been providing medical treatment for Plaintiff's back injury. In the pre-trial agreement Defendants stipulated that Plaintiff suffered a compensable injury to her back.
7. When her shift ended on the date of injury, Defendant-Employer sent Plaintiff to Rapid Care, an urgent care facility in Sanford, where she was evaluated by Dr. Francesco Olivito. Dr. Olivito diagnosed Plaintiff with low back pain, administered a steroid shot, and restricted Plaintiff to sedentary work with no lifting, no forceful pushing or pulling, and sitting work only.
8. After Plaintiff was assigned work restrictions by Dr. Olivito on September 30, 2009, she was told by John Gerald, the director of Defendant-Employer, that no light-duty work was available. As a result, she was initially out of work for five days. On October 5, 2009, Dr. Olivito continued Plaintiff's sedentary work restrictions.
9. On October 6, 2009, Plaintiff was notified by Defendant-Employer that light-duty work was available, and she returned to work performing administrative tasks such as answering phones.
10. On October 12, 2009, Dr. Olivito released Plaintiff to full duty after her pain improved. After being released to full duty on October 12, 2009, Plaintiff performed her regular duties until her back pain worsened.
11. On October 15, 2009, Dr. Olivito ordered an MRI, for which Defendants denied authorization, and again restricted Plaintiff to light-duty work of no lifting, no forceful pushing or pulling, no prolonged standing or walking, and no repetitive bending, kneeling, or squatting. Dr. Olivito also noted that Plaintiff should minimize the use of her low back and avoid repetitive motion of her low back. After Dr. Olivito assigned restrictions on October 15, 2009, Plaintiff *Page 6 
performed paperwork duties, including chart audits and filing for Defendant-Employer. However, Plaintiff was not able to care for patients as a result of her restrictions related to her compensable injury.
12. On October 22, 2009, Dr. Olivito restricted Plaintiff to no lifting more than five pounds, no forceful pushing or pulling, no repetitive bending, kneeling, or squatting, and no climbing stairs, ladders, or working at heights. On October 29, 2009, Dr. Olivito restricted Plaintiff to no lifting, no forceful pushing or pulling, no prolonged standing or walking, no repetitive bending, kneeling, or squatting, and no climbing stairs, ladders, or working at heights. On October 30, 2009, Dr. Olivito referred Plaintiff for physical therapy.
13. After the MRI was denied, Plaintiff used her health insurance to see her personal physician, Dr. Robert Deucher on October 30, 2009. Dr. Deucher diagnosed radicular pain with paresthesias in the right foot and referred her to Dr. James Rice of Sandhills Orthopaedic Clinic.
14. On November 2, 2009, Dr. Rice saw Plaintiff and ordered an MRI due to her neurological symptoms.
15. On November 10, 2009 and November 24, 2009, Dr. Olivito continued Plaintiff's restrictions of no lifting, no forceful pushing or pulling, no prolonged standing or walking, no repetitive bending, kneeling, or squatting, and no climbing stairs, ladders, or working at heights. On November 10, 2009, Dr. Olivito also continued Plaintiff's physical therapy.
16. While Plaintiff was working light duty, as ordered by Dr. Olivito, Defendant-Employer disciplined Plaintiff twice over a period of two weeks and terminated her on November 10, 2009. The first discipline stemmed from an event that occurred on October 27, 2009. Plaintiff was sitting at the nurses' desk performing paperwork while a State inspector was present at the facility. When a patient began calling that she needed to use the bathroom, *Page 7 
Plaintiff walked to the break room and alerted the nurse who was responsible for the patient. The nurse told Plaintiff that she would take care of the patient, and Plaintiff returned to her desk. Without speaking to Plaintiff about the matter, the State inspector reported the incident to Plaintiff's supervisors, under the mistaken impression that Plaintiff had ignored the patient's request. However, Plaintiff was working sedentary duty and was under work restrictions that prevented Plaintiff from assisting the patient. As a result of the incident, Defendant-Employer gave Plaintiff a "Final Warning," the highest level of discipline short of termination.
17. Plaintiff received her second discipline and was terminated on November 10, 2009. Defendant-Employer contended that Plaintiff improperly signed off on an incorrect medical administration record, frequently referred to as a MAR. A MAR is a record prepared by a pharmacist and used by nurses to determine what medications to give a patient. The MAR is reviewed by two nurses to ensure that the medications administered are consistent with those ordered by the patient's physician. Defendant-Employer alleged that Plaintiff and another nurse who reviewed the MAR, Mary Elliott, failed to notice that the MAR improperly discontinued a diabetic patient's insulin. As a result, Defendant-Employer alleged that a patient went without the medicine for a period of time.
18. Defendants contend that Ms. Elliott was given a verbal warning, the least severe form of discipline, as a result of the MAR incident. However, Defendants failed to produce evidence corroborating that Ms. Elliott was disciplined, and they failed to call Ms. Elliott, who was employed by Defendant-Employer on the date of hearing before the Deputy Commissioner, to testify about the matter.
19. Had Plaintiff not received the previous "Final Warning" on October 27, 2009, she would not have been terminated as a result of the MAR incident. *Page 8 
20. While treating with her own physicians, Plaintiff continued to see Dr. Olivito as the authorized treating physician for her claim. On December 8, 2009, he referred her to an orthopaedic surgeon because her symptoms were not improving.
21. On December 11, 2009, Defendants sent Plaintiff to Dr. Mark Mikles of Raleigh Orthopaedic Clinic. Dr. Mikles ordered an MRI and wrote Plaintiff out of work. The MRI was taken on December 14, 2009, and showed a small central herniated disc at L5-S1, eccentric to the right.
22. On January 8, 2010, Dr. Mikles released Plaintiff to light-duty work with no lifting more than 10 pounds and flexible sit-to-stand schedule, ordered physical therapy, and recommended a trial of epidural steroid injections. Plaintiff underwent two injections with mild, temporary improvement. In addition, Dr. Mikles prescribed Lyrica. After Plaintiff began taking the Lyrica, Plaintiff's pain improved, dropping to a two on a scale of one to 10.
23. On February 26, 2010, Dr. Mikles sent Plaintiff for more physical therapy and continued Plaintiff's light duty. However, Dr. Mikles advised Plaintiff to progress to full-duty as of March 15, 2010. 24. On April 30, 2010, Plaintiff returned to Dr. Mikles with complaints that the pain had grown severe again. He ordered another MRI, prescribed Lodine, and increased the dosage of her Lyrica. He also placed her again on light-duty work restrictions. The repeat MRI indicated an annular tear at L5-S1 with posterior central disc bulge. On May 28, 2010, Dr. Mikles reviewed the MRI and ordered a discogram from L4 to S1. He also prescribed Ultram, Lodine, and Lyrica. *Page 9 
25. After her May appointment with Dr. Mikles, Plaintiff moved to South Carolina due to her need for financial support from her parents. Her care has been transferred to a physician there. Plaintiff remains on the light-duty restrictions assigned by Dr. Mikles.
26. Since her termination from Defendant-Employer, Plaintiff has performed a diligent job search. She was terminated on November 10, 2009, and began documenting a job search two days later. Between November 12, 2009, and the hearing date of June 7, 2010, before the Deputy Commissioner, Plaintiff applied for at least 122 jobs, which amounts to more than 17 applications per month. Despite her efforts, Plaintiff has been unable to obtain suitable employment.
27. Following her termination from Defendant-Employer, Plaintiff applied for unemployment benefits. Defendant-Employer challenged her right to unemployment benefits. Plaintiff began receiving unemployment benefits of $389.00 per week effective immediately after her termination and continuing as of the date of hearing before the Deputy Commissioner.
28. The Full Commission finds as fact that Plaintiff continues to require medical treatment as a result of her back injury. Plaintiff remains under the restrictions Dr. Mikles imposed on April 30, 2010 of no lifting greater than 10 pounds with a flexible sit/stand schedule.
29. The Full Commission finds based upon the greater weight of the evidence that as a direct result of her compensable back injury, Plaintiff has been totally disabled from October 1, 2009 to October 5, 2009, November 11, 2009 to March 14, 2010, and from April 30, 2010, to the present and continuing.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following: *Page 10 
 CONCLUSIONS OF LAW
1. On September 30, 2009, Plaintiff suffered a compensable injury her low back in the course and scope of her employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. As a direct result of her compensable back injury, Plaintiff has been totally disabled from October 1, 2009 to October 5, 2009, November 11, 2009 to March 14, 2010, and from April 30, 2010, to the present and continuing. N.C. Gen. Stat. § 97-29; Russell v. LowesProd. Distrib.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
3. When an employee who has sustained a compensable injury and has been provided rehabilitative employment is terminated for misconduct, such termination does not automatically constitute a constructive refusal to accept suitable employment. Rather, the employer bears the burden of establishing: (1) that the employee was terminated for misconduct; (2) that the same misconduct would have resulted in the termination of a nondisabled employee; and (3) that the termination was unrelated to the employee's compensable injury. N.C. Gen. Stat. § 97-32; McCrae v.Toastmaster, 358 N.C. 488, 597 S.E.2d 695 (2004);Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
4. In the present claim, Defendants have failed to meet their burden of establishing that Plaintiff has constructively refused to accept suitable employment. N.C. Gen. Stat. § 97-32. Specifically, Defendants have failed to establish that Plaintiff's termination was unrelated to her compensable injury. Plaintiff received the "Final Warning" for the October 27, 2009 incident as a direct result of her compensable injury. If not for the "Final Warning," Plaintiff would not have been fired for the alleged MAR incident. Thus, Plaintiff's termination is causally related to her compensable injury. But for the injury she would not have been terminated. Seagraves v. AustinCo. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996). *Page 11 
5. Moreover, even if an employer meets its burden of establishing constructive refusal of suitable employment, the burden then shifts to the employee to show that her inability to find or hold other employment at a wage comparable to that he earned prior the injury is due to the work-related disability. In the present claim, Plaintiff has established, through the diligent job search she has performed, that her failure to obtain other employment is due to her compensable injury and the work restrictions she is under.McCrae v. Toastmaster, 358 N.C. 488, 597 S.E.2d 695 (2004).
6. For any week in which Plaintiff is owed total disability benefits and has received unemployment benefits, Defendants are entitled to deduct the amount paid in unemployment benefits from the disability benefits to be paid. N.C. Gen. Stat. § 97-42.1.
7. Plaintiff continues to require medical treatment as a direct result of her compensable back injury. Defendants shall continue to pay for all medical treatment related to Plaintiff's back injury that is reasonably necessary to effect a cure, give relief, or lessen the period of Plaintiff's disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the credit for unemployment benefits paid and to a reasonable attorney's fee, Defendants shall pay Plaintiff total disability benefits pursuant to N.C. Gen. Stat. § 97-29 at the rate of $568.60 per week for the periods of October 1, 2009 to October 5, 2009, November 11, 2009 to March 14, 2010, and from April 30, 2010, and continuing until Plaintiff returns to suitable employment or until further order of the Industrial Commission. *Page 12 
2. For any week in which Plaintiff has received unemployment benefits and is owed total disability benefits under this Award, Defendants may deduct the amount of unemployment benefits paid from the disability benefits owed.
3. Defendants shall pay all medical compensation incurred or to be incurred by Plaintiff for treatment of the compensable injuries, when the bills have been submitted to and approved by the Industrial Commission, for so long as such treatment may be reasonably required to effect a cure, give relief, or lessen the period of disability.
4. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for Plaintiff. This fee shall be deducted from the amount due Plaintiff and paid directly to counsel for Plaintiff. Thereafter, counsel for Plaintiff shall receive every fourth check.
5. Defendants shall pay costs.
This the 18th day of July, 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1